IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jamal Qureshi, on behalf of himself and all others similarly situated, | ) ) | |
| | ) | Civil Action |
| Plaintiffs, | ) | File No. 4:26-cv- |
| | ) | |
| v. | ) | |
| | ) | |
| Sony Interactive Entertainment LLC, | ) | Jury Demanded |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S ORIGINAL CLASS COMPLAINT**

PLAINTIFF Jamal Qureshi ("Mr. Qureshi" or "Class Plaintiff"), on behalf of himself and all others similarly situated, brings this class action complaint against Defendant Sony Interactive Entertainment LLC ("Sony" or "Defendant"), alleging as follows:

**I.
INTRODUCTION AND SUMMARY OF THE CASE**

1.     Plaintiff brings this class action complaint against Sony for its retention of a substantial windfall generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq*.

2.     Beginning in February 2025, the Trump administration imposed sweeping tariffs on imports from numerous countries under purported authority of the IEEPA. The tariffs dramatically increased the cost of imported consumer goods sold in the United States.

3.     Major U.S. importers, including Sony, responded by increasing prices on consumer goods to offset the cost of these tariffs. As a result, consumers in the U.S. paid higher retail prices for goods reflecting the economic burden of these tariffs.

4.     Mr. Qureshi was one such consumer. On December 16, 2025, he purchased a Sony PlayStation Console with a price that included a pass-through of the IEEPA tariffs.

1

5.      On February 20, 2026, the U.S. Supreme Court held that President Trump's IEEPA-based tariffs are unlawful. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026) (slip op. at 20).

6.      Resulting from that decision, importers who paid those IEEPA-based tariffs – including Sony – became entitled to refunds of the duties they previously paid to U.S. Customs and Border Protection ("CBP"). To facilitate the refunds to thousands of U.S. importers – including Sony – the CBP created a tariff refund website to manage IEEPA duty refunds following the Supreme Court's February 20, 2026, *Learning Resources, Inc.* decision.

7.      The economic reality of the tariff regime, however, is that importers like Sony did not ultimately bear all the costs of the tariffs. Sony, for instance, passed the elevated costs on to U.S. consumers in the form of higher retail prices on one popular product, the Sony PlayStation, beginning on August 21, 2025.

8.      Sony therefore collected the tariff costs from consumers through elevated pricing, while seeking refunds of the same tariff payments from the federal government.

9.      Unless restrained by this Court, Sony stands to recover the same tariff payments twice – once from consumers through higher prices and again from the federal government through tariff refunds, including interest paid by the government on those refunds.

10.     This class action lawsuit seeks to prevent such an unjust result.

11.     Unlike companies such as FedEx and UPS who have explicitly stated they will pass tariff refunds back to their customers, Sony has made no such commitment.

12.     Mr. Qureshi brings this class action on behalf of thousands, if not millions, of U.S. consumers who purchased Sony's PlayStation Consoles during the tariff period and who paid inflated prices reflecting Sony's pass-through of unlawful tariffs.

13.     Plaintiff seeks restitution of these tariff overcharges, together with appropriate declaratory, injunctive, and monetary relief.

## II.
### JURISDICTION AND VENUE

14.    Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because: (a) Plaintiff, and at least one member of the class, is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

15.    The Court has personal jurisdiction over Sony because the Defendant conducts significant business in this District, and because the wrongful conduct occurred in this District.

16.    Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial portion of the events and conduct giving rise to Mr. Qureshi's claims occurred in the Southern District of Texas.

## III.
### THE PARTIES

17.    Class Plaintiff Jamal Qureshi is a resident of Harris County, Texas. Mr. Qureshi purchased a Sony PlayStation Console on December 16, 2025.

18.    Defendant Sony Interactive Entertainment LLC is a California limited liability company with its headquarters and principal place of business at 2207 Bridgepointe Parkway, San Mateo, California. It is a wholly-owned subsidiary of the Japanese consumer electronics and media conglomerate Sony Corporation, and is the owner the PlayStation digital entertainment brand. Defendant may be served with process by serving its registered agent, CSC Lawyers Incorporating Service, at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

## IV.
### FACTUAL BACKGROUND

### A.    Sony's PlayStation Console Business

19.    Sony Interactive Entertainment LLC's parent company, Sony Group Corporation, is a global Japanese conglomerate known for its leading roles in electronics, gaming, music, and entertainment.

3

20.     Headquartered in San Mateo, California, Sony Interactive Entertainment LLC ("Sony" or "Defendant") is the global business behind the well-known PlayStation brand, responsible for the development, production, and sales of both hardware and software. Sony's most recent model, the PlayStation 5, has become the best-selling video game console of all time. The PlayStation 5 console launched on November 12, 2020, and by March 31, 2021, had sold 7.8 million units.[1] Going forward, the PlayStation 5's popularity has remained strong, selling millions of units a year.

21.     Sony currently produces the PlayStation 5, PlayStation 5 Pro, PlayStation 5 Slim, and PlayStation 5 Slim Digital Edition (the "PlayStation Consoles").

22.     The PlayStation Consoles are manufactured primarily in Japan, China, and Thailand, and then imported into the United States.

23.     Sony is the importer of record of most, if not all, PlayStation Consoles brought into the U.S. for sale. Thus, imported goods account for nearly all of Sony's retail sales of PlayStation Consoles in the U.S.

24.     Because Sony imported the PlayStation Consoles sold in the U.S. during the Class period, the IEEPA tariffs directly increased Sony's cost of these Consoles sold to U.S. consumers.

**B.    The U.S. IEEPA tariffs imposed on Sony; Sony's corresponding price hikes of their PlayStation Consoles; and, the unconscionable windfall to Sony at the expense of Plaintiff and members of the Class**

25.     Beginning in February 2025, President Trump issued a series of executive orders to impose tariffs on goods imported from most foreign countries, including Canada, Mexico, China, and other U.S. trading partners. Each executive order was premised on IEEPA authorization of the tariffs. President Trump claimed that these tariffs were justified under IEEPA because of a purported national emergency.

---

[1]  *See* Sam Byford, Sony has sold 7.8 million PS5 consoles, The Verge (Apr. 28, 2021), https://www.theverge.com/2021/4/28/22407195/sony-ps5-sales-numbers-q4-2020-earnings.

26.    Under the authority of IEEPA, President Trump imposed tariffs of 25% on most imports from Canada and Mexico, tariffs as high as 145% from China, and a baseline 10% tariff on nearly all imports to the United States.

27.    Throughout the relevant period, Sony paid IEEPA tariffs to the CBP. The IEEPA tariffs had a substantial impact on the cost of Sony PlayStation Consoles, which are imported from tariffed countries, including a majority from China.

28.    Sony, for instance, revealed in its earnings report for July to September, 2025, that the tariffs impacted Sony's PlayStation Console production in China, and required Sony to pay nearly $194 million in import-related fees during the July-September 2025 quarter.

29.    Economists and government agencies widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties. Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.[2]

30.    When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.[3] Companies consider tariffs to be costs that are to be incorporated into the pricing structure.

31.    Sony was no exception. Like other companies that faced the massive IEEPA tariffs, Sony raised its PlayStation Consoles' prices on August 21, 2025, and then again on April 2, 2026.

---

[2] *See* Julian Hinz et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. Policy Brief (Jan. 19, 2026); see also Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020).

[3] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y., Liberty Street Econ. (June 4, 2025), available at https://libertystreeteconomics.newyorkfed.org.

32.    Citing inflation and global economic pressures, Sony passed the elevated tariff costs on to U.S. consumers in the form of higher retail prices. To offset its substantial tariff bill, on August 21, 2025, Sony raised prices for all versions of the PlayStation Consoles to be sold in the U.S. by $50. Then, on March 27, 2026, Sony announced it will raise prices once again on its range of PlayStation Consoles for a second time in less than a year. In the U.S., effective April 2, 2026, the Sony PlayStation 5 "disc edition" jumped from $549.99 to $649.99, a $100 increase (in addition to the $50 increase that Sony had already implemented on August 21, 2025 on all PlayStation Consoles). The PlayStation digital edition increased by $100, to $599.99. The U.S. sales price of the PlayStation 5 Pro, Sony's most powerful version of the console, increased by $150, to $899.99.

33.    On February 20, 2026, the U.S. Supreme Court held that the IEEPA tariff regime was unlawful because the IEEPA does not authorize the President to impose such tariffs; the Court thus invalidated all IEEPA-based tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026) (slip op. at 20).

34.    President Trump subsequently issued an Executive Order terminating the IEEPA Tariffs, and on February 22, 2026, the CBP issued CSMS #67834313, announcing that it will halt collection of all tariffs imposed pursuant to IEEPA. The termination of IEEPA tariffs took effect at 12:00 a.m. EST on February 24, 2026.

35.    As a consequence, importers who had paid these IEEPA-based tariffs – including Sony – became entitled to refunds of the duties they had previously paid to the CBP. According to Mr. Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA was approximately $166 billion. *Atmus Filtration, Inc. v. United States*, No. 26-01259, Order at 1 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 31 at 6.

36.　　To facilitate refunds of the $166 billion in collected tariffs, the CBP created a tariff refund website – the "Consolidated Administration and Processing of Entries (CAPE) portal", which went live on Monday, April 20, 2026, at 8 a.m. EST. The CBP expects refunds to be issued within 60 to 90 days after it accepts a refund application.

37.　　Given the substantial amount of IEEPA tariffs Sony paid to the CBP as a result of importing the Sony PlayStation Consoles, it is now, understandably, in the process of seeking this vast sum of money from the CBP.

38.　　This presents an obvious problem. Although Sony will recover tariff refunds on the tariffed PlayStation Consoles it sold in the U.S. during the Class period, Sony's U.S. based customers bore the economic brunt of these tariffs by paying higher prices set by Sony on August 21, 2025, and then on April 2, 2026. Sony obtaining a double recovery windfall is therefore imminent. Sony is poised to be paid twice for the same unlawful tariff burden: once by its customers (through elevated prices) and once by the U.S. government (through tariff refunds).

39.　　Sony has an affirmative obligation and duty not only to actively seek from the U.S. the tariff refund money belonging to its customers who purchased Sony PlayStation Consoles during the Class period, but also an affirmative obligation and duty to proactively return this money to the parties that ultimately paid them – Sony's customers.

40.　　Unlike other companies including FedEx and UPS who have explicitly stated that they will pass tariff refunds back to their customers, Sony has made no such commitment.

41.　　Because Sony has made no legally binding commitment, on its own, to return tariff-related overcharges to consumers who actually paid them, Mr. Qureshi and members of the Class are given no choice but to seek return of their money by means of this class litigation. Plaintiff believes this to be the most reliable, efficient, and economical vehicle to serve this purpose.

## V.
### CLASS ALLEGATIONS

42.    Mr. Qureshi brings this action on his behalf, and as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23 on behalf of the following proposed class (the "Class"):

> **All individuals in the United States who purchased one or more Sony PlayStation Console(s) during the class period of August 1, 2025, to the present.**

43.    Plaintiff reserves the right to modify or amend the definition of the proposed Class, and to add, modify, amend or remove proposed subclasses, before the Court determines whether certification is appropriate, and as the parties engage in discovery and possible settlement discussions.

44.    Excluded from the proposed Class are: (a) Defendant; (b) subsidiaries and affiliates of Defendant; (c) parent companies of Defendant; (d) any person or entity who is an officer, director, employee, or controlling person of Defendant; (e) any entity in which Defendant has a controlling interest; (f) the legal representatives, heirs, successors, and assigns of any excluded party; (g) any judicial officer presiding over this action, the members of his or her immediate family and staff, and any juror assigned to this action; (h) all persons or entities that properly execute and timely file a request for exclusion from the Class; and (i) any attorneys representing the Plaintiff or the Class.

45.    This case satisfies the requirements of a class action pursuant to FRCP 23, including without limitation, the requirements of numerosity, commonality, typicality, adequacy, predominance and superiority.

46.    **Numerosity** – This putative class is so numerous that joinder of all Class members is impracticable. While the exact number of Class members is not presently known, it is generally

ascertainable through targeted discovery. Given Sony's large U.S. consumer base that is similarly situated to Mr. Qureshi, the Class is comprised of thousands if not millions of individuals.

47.   **Commonality** – Commonality exists because Mr. Qureshi's claims, and Class members' claims, present shared questions of law and fact, and resolving them collectively will resolve this class-wide litigation in the most efficient manner. Likewise, shared questions predominate over individual questions, including, without limitation:

a.   whether Sony paid the IEEPA tariffs imposed on Sony's PlayStation Consoles during the Class Period;

b.   whether Sony increased retail prices on goods sold to consumers in response to the IEEPA tariffs and in response to the economic uncertainty the tariffs imposed on Sony's business;

c.   whether Sony passed through some, or all, of the IEEPA tariff costs to U.S. consumers through higher prices on Sony's PlayStation Consoles;

d.   whether Sony has sought and received, or will seek and receive, refunds of the IEEPA tariffs from the federal government;

e.   whether Sony's double recovery – that is, (i) Sony's retention of the IEEPA tariff refunds and (ii) Sony's recovery of the cost of the IEEPA tariffs via increased sales prices Sony charged consumers for their PlayStation Consoles, constitutes unjust enrichment / money had and received; and,

f.   the appropriate measure of restitution, damages, and other relief owed to U.S. purchasers of the PlayStation Consoles that resulted from Sony's conduct.

48.   **Typicality** – Mr. Qureshi's claims are typical of Class members' claims because, like every Class member, he bought a PlayStation Console from Sony subject to price increases in response to the IEEPA tariffs. Additionally, Plaintiff's claims, as the Class representative, are not just typical, but identical, to the Class members' claims because Mr. Qureshi brings the same claims as the Class members. Plaintiff, and each Class member, has an interest in seeking compensation from Sony for the identical reasons – being assessed a cost that Sony has recovered, twice; and, being assessed a cost that the U.S. Supreme Court has ruled illegal.

49.    **Adequacy** – Class Plaintiff (a) seeks no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages he has suffered are typical of other Class members; (b) will fairly and adequately protect the interests of the Class, (c) will represent the Class without any conflict of interest, and (d) has retained counsel experienced in complex class and collective action litigation.

50.    **Superiority** – This Class action is superior to other available methods for the fair and efficient adjudication of this litigation. Sony's conduct set forth in this action stems from a common and uniform policy and practice, resulting in common violations of the law. As such, a class action will permit the Class, comprised of a large number of individuals, to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that thousands of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by the Class members, who could not individually afford to litigate a complex claim against a large corporate defendant. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

51.    The nature of Class Plaintiff's and Class members' claims makes utilization of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and member of the Class for the common wrongs alleged in this case. Without the class action mechanism, Defendant would necessarily gain an unconscionable advantage because it would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; and the costs of individual suits could unreasonably consume the amounts that would be recovered. Likewise, proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class, and will establish the right of each member of the Class to recover on the cause of action alleged; and, individual actions will

create a risk of inconsistent results and will be unnecessary and duplicative of this litigation. Further, class certification will obviate the need for such unduly duplicative litigation that might result in inconsistent judgments as to Sony's unlawful practices.

52. In the interest of justice and judicial efficiency, it is desirable to concentrate the litigation of all Class members' claims in a single forum.

53. Plaintiff will fairly and adequately protect the interests of the Class. The interests of the Class representative are consistent with those of Class members. In addition, Plaintiff is adequately represented by experienced and able counsel having expertise in pertinent areas of the law, trial practice, and class action representation.

54. The class action is superior to all other available methods for the fair and efficient adjudication of this dispute. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

55. *Rule 23(b)(2) Class Certification*. Sony has acted in a manner that applies generally to the proposed Class, making both declaratory and injunctive relief appropriate with respect to the proposed Class as a whole. Sony's decision to raise prices on its PlayStation Consoles subject to IEEPA tariffs and to then seek a blanket refund from the government without committing to establish any customer refund mechanism warrants class-wide declaratory and injunctive relief.

**VI.**
**CLAIMS FOR RELIEF**

**COUNT 1**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

56. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

57. Plaintiff and the Class have conferred, and continue to confer, a benefit upon Sony in the form of money Defendant received as a result of the price increases / inflated sales prices of

the Sony PlayStation Consoles during the period of August 1, 2025, to the present. Even after the IEEPA tariffs were no longer being collected from Sony beginning February 20, 2026, the Defendant made no effort to lower its PlayStation Consoles' sales prices and continued to sell the Consoles at inflated prices.

58.    Sony appreciates and has knowledge of the benefits conferred upon it by Plaintiff and member of the Class. Sony is now in the process of recovering from the government the same tariff costs it collected from its customers (including from Mr. Qureshi and members of the Class) by selling the Sony PlayStation Consoles to them at inflated prices. Sony has already been enriched by the inflated prices paid by Plaintiff and the Class, and Sony's recovery of the same tariff costs from the federal government compounds that enrichment.

59.    Under principles of equity and good conscience, Sony cannot be allowed to retain the amount of the price increases obtained from Plaintiff and members of the Class, which Sony has unjustly obtained as a result of its price increases on the PlayStation Consoles subject to unlawful tariffs.

60.    As it stands, Sony has retained profits generated from its sales of products subject to tariff-related price increases and should not be permitted to retain those ill-gotten profits while it receives a refund of the tariffs it paid.

61.    Under the circumstances set forth in this Complaint, equity requires that Sony pay Plaintiff and members of the Class all IEEPA tariff costs passed through to its customers who purchased the Sony PlayStation Consoles during the Class period, the amount of which will be proven at trial.

62.    Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any money Sony has retained as a result of the unlawful and wrongful conduct alleged herein.

## COUNT 2
## Money Had and Received
### (On behalf of Plaintiff and the Class)

63.    Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

64.    Sony received money from Mr. Qureshi and from each member of the Class in the form of higher prices caused by the pass-through of IEEPA tariff costs.

65.    Sony received this money for the purpose of repaying itself the IEEPA tariffs it had advanced, as the importer of record, to CBP as duties on the imported PlayStation Consoles.

66.    The Supreme Court has since determined that these tariffs are unlawful because they lacked the requisite statutory authorization.

67.    The money belonged to Plaintiff and to each member of the Class. Specifically, the money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belonged to Plaintiff and to each member of the Class.

68.    Sony has not returned the money to the Plaintiff or to members of the Class.

69.    It will give offense to equity and good conscience if Sony is allowed to retain the tariff surcharge. In equity and good conscience, Sony should not be permitted to retain the funds consumers paid above and beyond what they would have absent the IEEPA tariffs. The money belongs to Plaintiff and to members the Class, and Sony is obligated to return it to them. Plaintiff and member of the Class seek return of the money in an amount to be proven at trial.

70.    Plaintiff pleads this Count in the alternative to Count 1. While Count 1 (Unjust Enrichment) addresses the inequity of Sony's retention of overcharges already collected, this Count more particularly addresses Sony's receipt and retention of government refund proceeds that, in equity, represent a return of money that was economically borne by Plaintiff and members of the Class, and not by Sony.

13

71.    Plaintiff and members of the Class seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

## COUNT 3
### Declaratory Relief, 28 U.S.C. § 2201
### (On behalf of Plaintiff and the Class)

72.    Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

73.    Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

74.    Plaintiff's and the Class' claims present an actual controversy as to the rightful ownership of the tariff surcharges paid to Sony.

75.    Plaintiff and members of the Class have suffered an injury by having been required to pay Sony a tariff surcharge because of the subject tariffs on Defendant's product. And, Plaintiff and members of the Class will imminently suffer an injury by Sony's unlawful retention of the tariff refund.

76.    This Court can exercise its equitable power to enter a declaratory judgment that retention of the tariff surcharges paid by Plaintiff and each member of the Class, but refunded to Sony, is unlawful for any of the above reasons.

## VII.
### JURY DEMAND

77.    In accordance with FRCP 38, Mr. Qureshi herein makes his demand for a jury trial.

14

## VIII.
### PRAYER FOR RELIEF

FOR ALL OF THESE REASONS, Class Plaintiff Jamal Qureshi respectfully requests that the Court provide the following relief:

a.      Determine that this action may be maintained as a class action under FRCP 23, appointing Plaintiff and his counsel to represent the proposed Class and directing that notice of this action be given to members of the proposed Class, to be paid by the Defendant;

b.      Enter an order declaring Sony's actions violate the equitable principles underlying claims for unjust enrichment and money had and received;

c.      Enter a declaration that Sony is obligated to return to Plaintiff and members of the Class all IEEPA duties passed on to customers in the form of higher prices of its Sony PlayStation Consoles, with interest;

d.      Award damages or restitution in an amount, to be determined at trial, that Sony was unjustly enriched by the tariff-cost component of sales prices charged to its customers for the Sony PlayStation Consoles beginning August 1, 2025, and thereafter;

e.      Order injunctive relief requiring Sony to cease and desist from engaging in the unlawful, unfair, and unconscionable practices alleged in this Complaint;

f.      Enter an order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Sony from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Sony's past conduct;

g.      Award prejudgment and post-judgment interest;

h.      Award reasonable attorneys' fees and costs to Class counsel;

i.      Award prejudgment and post-judgment interest at the maximum allowable rate on amounts awarded; and,

j.      Grant such other equitable relief as the Court may deem just and proper, including an award of punitive damages.

15

Respectfully submitted,

**ALI S. AHMED, P.C.**

By: */s/ Salar Ali Ahmed*
  **Salar Ali Ahmed**
  Federal Id. No. 32323
  State Bar No. 24000342
  430 W. Bell Street
  Houston, Texas 77019
  Telephone: (713) 898-0982
  Email: aahmedlaw@gmail.com

  **Attorney for Plaintiff Jamal Qureshi**
  **and for the Class**

16